1
2
3
4
5
6
7               IN THE UNITED STATES DISTRICT COURT

8             FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   MORRIS MESTER,

11              Plaintiff,                 No. CIV S-10-2105 LKK EFB P

12        vs.

13   KELSO, et al.,

14              Defendants.        <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  The action proceeds on the original complaint filed on August 6, 2010.  Dckt.

18   No. 1.  After filing the complaint, plaintiff filed numerous motions and declarations seeking

19   injunctive relief.  Dckt. Nos. 3, 5, 7, 10, 12, 13, 17; *see also* Dckt. Nos. 18, 24, 26, 32, 34, 35, 36,

20   38, 39, 40.  On November 9, 2010, the court screened plaintiff's complaint and found service

21   appropriate for defendants Clark, Rahman, Swingle and French.  Dckt. No. 19.  The court also

22   directed these defendants to respond to plaintiff's motions.  *Id.*  The Attorney General timely

23   responded.  Dckt. No. 25.  For the reasons stated, the court recommends that plaintiff's motions

24   for injunctive relief be denied.

25   ////

26   ////

1

## I.    Background

Plaintiff claims that defendants Clark, Rahman, Swingle and French were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Plaintiff claims to suffer from many medical conditions that cause him daily pain and discomfort.  These conditions include hepatis C, pruritus, restless leg syndrome, rheumatoid arthritis in his hips, pelvis and spine, neuropathy, carpal tunnel syndrome in both wrists, nerve damage in his right arm, and incontinence of the bowel.  He alleges that he must take morphine and Lyrica for one or more of his medical conditions.  He further alleges that defendant Clark, a licensed vocational nurse, discontinued plaintiff's morphine and Lyrica prescriptions without any doctor's order to do so.  Plaintiff claims that he suffered from painful withdrawal symptoms as a result.

Plaintiff also alleges that he suffered nerve damage in his hand, arms and wrist because of being cuffed and transported with an "iron black box."  He claims that the black box caused his hands to swell and that they have been causing him pain since May of 2010.  He alleges that he directed requests for medical care to defendants Swingle and Rahman, but his requests went unanswered and he was not provided with adequate medical care.  Further, plaintiff alleges that defendants Swingle and French would not excuse plaintiff from having to wear the "black box" with his cuffs, despite the injuries the black box is alleged to have caused him.

Plaintiff also claims he alerted Swingle and French about his problems with the morphine, his wrist and hand conditions, and his alleged need to see a pain specialist and for emergency treatment, but they failed to respond to his needs.  Plaintiff also complains that the morphine damages his liver and causes a skin condition called pruritus, which has caused sores to develop on his body.  Thus, he claims that he needs to see a hepatologist and that he should receive a pain medication other than morphine.  Defendant Rahman allegedly told plaintiff that he would not change plaintiff's pain medication, but that plaintiff could just stop taking the morphine and suffer through withdrawal symptoms.  Rahman has also allegedly refused to refer plaintiff to a liver specialist or a neurologist for plaintiff's hand/wrist condition.

1    Essentially, through his numerous motions and declarations, plaintiff requests injunctive

2    relief in the form of: 1) an order directing that he receive something other than morphine to

3    manage his pain and minimize his pruritus; 2) that he be seen by various specialists to treat his

4    pain, pruritus, hepatitis C, and wrist and hand conditions; 3) that he be taken to the emergency

5    room because High Desert doctors are refusing to treat him; and 4) an order preventing his

6    transfer from High Desert to Pleasant Valley State Prison.

7    **II.    Legal Standards**

8    A preliminary injunction will not issue unless necessary to prevent threatened injury that

9    would impair the court's ability to grant effective relief in a pending action. *Sierra On-Line, Inc.*

10   *v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871

11   F.2d 863 (9th Cir. 1989). A preliminary injunction represents the exercise of a far reaching

12   power not to be indulged except in a case clearly warranting it. *Dymo Indus. v. Tapeprinter,*

13   *Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). In order to be entitled to preliminary injunctive relief, a

14   party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer

15   irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

16   and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127

17   (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). The Ninth

18   Circuit has also held that the "sliding scale" approach it applies to preliminary injunctions--that

19   is, balancing the elements of the preliminary injunction test, so that a stronger showing of one

20   element may offset a weaker showing of another--survives *Winter* and continues to be valid.

21   *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010). In cases brought by

22   prisoners involving conditions of confinement, any preliminary injunction "must be narrowly

23   drawn, extend no further than necessary to correct the harm the court finds requires preliminary

24   relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

25   ////

26   ////

3

**III.    Discussion**

Plaintiff has not established a likelihood of success on the merits.  To prevail on a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  He must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992).  A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*  However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eighth Amendment's prohibition of cruel and unusual

1  punishment.  In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical

2  malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d

3  458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391

4  F.3d 1051, 1057 (9th Cir. 2004).   It is well established that mere differences of opinion

5  concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation.

6  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344

7  (9th Cir. 1981).  When plaintiff's allegations are taken in conjunction with the declaration

8  testimony submitted by defendants in opposition to the motion, it is apparent that plaintiff has

9  failed to demonstrate more than his disagreement with the opinions as to his appropriate

10  treatment.

11      In their November 30, 2010 response to plaintiff's motions for injunctive relief,

12  defendants include a declaration from defendant Swingle, who is the Chief Medical Officer at

13  High Desert State Prison, where plaintiff was recently housed, and where the events alleged in

14  the complaint are alleged to have occurred.  Dckt. No. 25, Swingle Decl. ¶ 1.

15      Swingle confirms that plaintiff has hepatitis C and pruritus (or itching), which is likely

16  caused by the morphine.  *Id.* ¶¶ 3, 4.  Swingle claims she has offered plaintiff medications other

17  than morphine, but that plaintiff has refused them, claiming he needs something stronger for his

18  pain.  *Id.* ¶ 9.  Swingle disagrees that plaintiff needs "something stronger" than what she has

19  offered.  *Id.*  In his reply to defendants' response, plaintiff admits that he has been offered "t-

20  codeine 3's" as an alternative to morphine.  Dckt. No. 34 at 2.  Plaintiff has not demonstrated

21  why codeine, as an alternative to morphine, is insufficient to manage his pain and/or minimize

22  his pruritus, which is thought to be caused by the morphine.

23      Swingle also contests plaintiff's claims that he needs to be seen by various specialists to

24  treat his pain, pruritus, hepatitis C, and wrist and hand conditions.  Swingle asserts that plaintiff

25  has already been seen by pain specialists.  Dckt. No. 25, Swingle Decl. ¶ 18.  Swingle also states

26  that pruritus means itching, and that the sores on plaintiff's body are caused by plaintiff

1   scratching himself because of the itching, and that the pruritus is not a symptom of liver damage

2   resulting from hepatitis C. *Id.* ¶¶ 4, 8, 10.  Swingle concludes that plaintiff's itching does not

3   require management by a specialist. *Id.* ¶ 19.  As for plaintiff's request for treatment by a

4   hepatologist, Swingle responds that this is not currently needed, but that "treatment for

5   [plaintiff's] Hepatitis C may be appropriate in the near future." *Id.* ¶ 17.  Swingle admits that

6   plaintiff has "some minor hand deformity," but notes that based on the results of radiology and

7   examination, no orthopedic specialist or neurologist is required for plaintiff's wrist and hand

8   conditions. *Id.* ¶¶ 13, 20.

9          In his reply, plaintiff disagrees with Swingle about the cause of the sores on his body and

10   insists that he needs to be referred to specialists because defendants do not really know what is

11   causing the sores and because the sores are not going away.  Dckt. No. 34 at 4.  He also admits

12   in his reply that he has been seen by a pain specialist and an orthopedic specialist. *Id.* at 2, 4.

13   Plaintiff claims that he was scheduled to see a pain specialist again, but the referral was denied.

14   *Id.* at 4.  He claims further that defendant Rahman referred plaintiff to an orthopedic specialist

15   and dermatologist, but that those referrals were also denied. *Id.*  Further, the exhibits to

16   plaintiff's reply include several radiology reports regarding plaintiff's chest, abdomen, left

17   shoulder and hips, as well as a neurologist's report dated March 29, 2007 regarding plaintiff's

18   complaints of a burning sensation in his hands, arms, feet and legs, and pain in his lower back.

19   *See id.*, Exs.

20          The record thus reflects that in the recent past, plaintiff has been referred to pain

21   specialists, orthopedic specialists, radiologists and a neurologist.  Further, Swingle, the Chief

22   Medical Officer at High Desert, asserts that plaintiff's conditions do not currently require that he

23   be seen by a hepatologist, orthopedic specialist, or a neurologist.  While plaintiff disagrees, his

24   disagreement with Swingle's conclusions, without more, cannot support a finding of deliberate

25   indifference on the part of Swingle or any other defendant.  Nor does it support a finding that

26   plaintiff will suffer irreparable harm if he is not seen by various specialists to treat his medical

6

1   conditions.

2         In response to plaintiff's request to be taken to the emergency room because he is not

3   being treated at High Desert, Swingle claims, in her November 30, 2010 declaration, that there is

4   no evidence that plaintiff was ever refused treatment at High Desert, and that he has no signs or

5   symptoms consistent with a condition that would require transport to an emergency room.  Dckt.

6   No. 25, Swingle Decl. ¶ 21.  In plaintiff's most recent filings, however, he indicates that after

7   being transferred to Pleasant Valley on December 2, 2010, he went to the emergency room on

8   four separate occasions – December 16, 23, 24 and 25, 2010.  Dckt. Nos. 36, 39, 40.  His

9   requests to go the emergency room are therefore moot.

10        While it appears that plaintiff does suffer from a variety of medical conditions, ones

11   which may very well cause plaintiff to experience severe pain and discomfort, plaintiff's motions

12   must be denied.  He has not demonstrated a likelihood of success on the merits.  Nor has he

13   demonstrated that he is likely to suffer irreparable harm in the absence of injunctive relief, or

14   that the balance of equities tips in his favor, or that an injunction is in the public interest.

15        As noted, plaintiff also requested an injunction to prevent him from being transferred to

16   Pleasant Valley.[1]  Dckt. No. 26.  As plaintiff has already been transferred this request is moot.

17   Moreover, construing the request as one to transfer plaintiff back to High Desert, such relief is

18   not warranted.  In his request, plaintiff claimed that his medical care would be delayed if

19   transferred to Pleasant Valley, and that because of his asthma, lung disease, and arthritis, he is

20   susceptible to Valley Fever.  *Id.*  However, plaintiff failed to explain why officials at Pleasant

21   Valley would be unable to provide him with adequate medical care or why his transfer to

22   Pleasant Valley would cause him to suffer an irreparable injury.  With his motion, plaintiff

23

24        [1] Plaintiff asserts that by transferring him to another prison, defendants have intentionally
25   stalled his medical care and retaliated against him for filing this lawsuit.  If plaintiff wishes to
  allege such claims, he must properly exhaust them through the administrative appeals process
26   available at his current institution, and then request leave of court to file a supplemental
  complaint adding those claims.

submitted a California Department of Corrections and Rehabilitation (CDCR) Memorandum, dated August 3, 2006, indicating that CDCR should identify inmates who are "most susceptible to developing [Valley Fever]" and implement strategies to prevent susceptible inmates from being housed in the "endemic area," which includes Pleasant Valley State Prison. *Id.*, Ex. A. The memorandum states that the criteria used for defining "susceptible" inmates who should not be housed in the endemic area includes inmates who are HIV infected, have a history of lymphoma, have had a solid organ transplant, have chronic immunotherapy (e.g., severe rheumatoid arthritis), have chronic lung disease requiring oxygen therapy, or have cancer and are on chemotherapy. *Id.* Plaintiff neither claims nor submits evidence to show that he falls within any of the criteria listed above. He claims he has lung disease, but does not claim to have "chronic lung disease requiring oxygen therapy." He also claims to have rheumatoid arthritis, but does not claim to be undergoing "chronic immunotherapy." Plaintiff's unsupported fear of contracting Valley Fever appears to be nothing more than a speculative injury. The court cannot find that plaintiff faces an immediate threat of irreparable harm based on speculation. *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1998). Moreover, inmates do not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another. *Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam)

**IV.    Conclusion**

Accordingly, the Clerk is directed to serve a courtesy copy of these findings and recommendations on Deputy Attorney General Richard B. Price at the address provided in the November 30, 2010 response to plaintiff's requests for injunctive relief.

////

////

////

1    Further, in light of the above, it is HEREBY RECOMMENDED that plaintiff's motions

2  for a preliminary injunction, Dckt. Nos. 3, 5, 7, 10,12, 13, 17, 18, 24, 26, 32, 34, 35, 36, 38, 39,

3  and 40, be denied.

4    These findings and recommendations are submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after

6  being served with these findings and recommendations, any party may file written objections

7  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

8  to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

9  specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158

10  F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

11  DATED:  January 20, 2011.

12

13                                    EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26